1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALAN JOSEPH MARQUEZ,               )
                                   )
            Petitioner,            )          No. C 06-0913 CRB (PR)
                                   )
      vs.                          )          ORDER DENYING
                                   )          PETITION FOR A WRIT OF
MIKE EVANS, Acting Warden,         )          HABEAS CORPUS
                                   )
            Respondent.            )
_____    )

       Petitioner was convicted by a jury of inflicting injury upon the co-habiting

mother of his child in violation of California Penal Code section 273.5(a), inflicting

injury upon a child in violation of California Penal Code section 273d, and six counts of

misdemeanor child endangerment in violation of California Penal Code section 273a(b).

The trial court found true various prior felony convictions and prison term allegations.

On July 23, 2003, the court sentenced petitioner to state prison for a term of 11 years,

consisting of the upper term of six years for inflicting injury upon a child, plus one year

consecutive for inflicting injury upon the co-habiting mother of his child, plus four

years for the prior prison terms.   The misdemeanor convictions were stayed under

California Penal Code section 654.

On February 25, 2005, the California Court of Appeal reversed the conviction for the misdemeanor child endangerment counts, but affirmed the other charges. On May 11, 2005, the California Supreme Court denied review.

Petitioner filed the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. On June 2, 2006, the court issued an order to show cause and, on June 26, 2006, respondent filed a motion to dismiss for failure to exhaust state remedies. Petitioner filed an amended petition for writ of habeas corpus limited to the three claims as to which he exhausted his state court remedies. Per order filed on July 20, 2006, the court issued another order to show cause as to why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause. Petitioner did not file a traverse.

## BACKGROUND

The California Court of Appeal summarized the facts of this case as follows:

Marquez has three sons with Mother: Son-1, born in 1992; Son-2, born in 1996; and Son-3, born in 2001 or 2002. At the time of trial, Son-1 was 10 years old and Son-2 was 7 years old. Between 1995 and 2002, Marquez was married to Deolinda V. In March 2002, Mother moved with the three sons into a residence with Marquez in Redwood City.

At the Redwood City residence during 2002, Marquez hit and pushed Mother and used his hands and a belt to hit the two older boys. Mother testified that Marquez spanked Son-1 and Son-2 on three occasions. One time the boys had big bruises on their backs, buttocks, and legs. Son-1 testified that Marquez hit Mother on a daily basis and hit him and his brother on a weekly basis.

Marquez and Mother argued the evening of January 5, 2003. Around 10:30 to 11:00 p.m., Mother attempted to retrieve Son-3 from a bedroom where he was with Marquez in order to put him to bed. Marquez got upset and tried to push her out the door. Mother's hand accidentally got caught in the door. Mother went into the kitchen; Marquez followed her and hit her hard in the head with the "TV" remote control. Marquez then followed Mother to another room and pushed her to the floor; she hit her head on a metal wall heater. The boys were crying and telling Marquez to leave Mother alone. He threatened them with a belt and then proceeded to kick and hit Mother with the belt when she

2

tried to stop him. The boys continued to yell at Marquez to stop, and he slapped Son-1 in the face, leaving a hand print, and left the residence.

About a week later, Police Officer Russell Federico came to the residence after being flagged down by Mother's brother. Mother told Officer Federico everything was fine, but Son-1 told her to tell the officer what was happening. Mother told Son-1 to be quiet and not say anything. When Officer Federico took Son-1 aside, he said that Marquez had been hitting Mother, him, and Son-2. When taken aside, Son-2 made similar statements to the officer. The officer took Mother and the three boys to the police station. The police interviewed Mother, Son-1, and Son-2 separately. In videotaped statements, Son-1 and Son-2 told Officer Federico that Marquez had hit them and Mother. Mother reluctantly admitted that Marquez had inflicted injuries upon her.

At trial, Mother also described being threatened and hit by Marquez in 1991 and 2001. Mother admitted that in the year 2000 she wrote a letter to Marquez's parole officer pretending to be Marquez's wife, Deolinda V. Mother accused Marquez of being abusive, of using alcohol and drugs, and of posing a danger to society.

A Redwood City police detective gave expert testimony on behalf of the prosecution about domestic violence and battered women.

Marquez testified in his own defense. He admitted he may have accidentally shut the bedroom door on Mother's fingers in early January 2003, but denied any other contact with her that night. He also testified that he had twice spanked his two older boys with a belt, but not hard, and only for disciplinary purposes after explaining the reason for the punishment. The spankings did not leave any marks.

Several witnesses for the defense testified that they had never seen Marquez hit his children or had never seen any injuries on Mother or on the boys.

People v. Marquez, No. A104035, 2005 Cal. App. Unpub. LEXIS 1653, at **3-7 (Cal. Ct. App. Feb. 25, 2005).

## DISCUSSION

### I.      Standard of Review

This court may entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

3

in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. §

4

2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

**II.    Claims**

Petitioner raises three claims for relief under § 2254: (1) the trial court's admission of a prejudicial videotape violated his due process right to a fair trial; (2) the trial court's admission of a 1991 restraining order violated his right to a fair trial by lowering the standard of proof; and (3) the imposition of the upper base term sentence of six years for inflicting injury upon a child violated his right to a jury trial.

A.    Admission of Videotape

Petitioner claims that the trial court's admission of the boys' videotaped statements deprived him of his due process right to a fair trial.  Petitioner argues that the statements lacked sufficient indicia of reliability to be admissible.

The trial court granted the prosecution's motion to admit the statements under California Evidence Code section 1360.  The videotape showed testimony by the boys that the petitioner had beaten their mother.  Both videotaped statements were played to the jury at trial.

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

guaranteed by due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v.

Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).  Accordingly, a federal court

cannot disturb on due process grounds a state court's decision to admit evidence unless

the admission of the evidence was arbitrary or so prejudicial that it rendered the trial

fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995);

Colley v. Summer, 784 F.2d 984, 990 (9th Cir. 1986).

          In order to obtain habeas relief on the basis of evidentiary error, petitioner must

show the error was one of constitutional dimension and that it was not harmless under

Brech v. Abrahamson, 507 U.S. 619 (1993).  The court must find that the error had "'a

substantial and injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n. 7

(9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

          Certain out-of-court statements–denominated "testimonial"–are inadmissible

unless the declarant testified at the trial or the accused had an earlier opportunity to

cross-examine the declarant.  Crawford v. Washington, 541 U.S. 36, 68 (2004).  "Where

testimonial statements are at issue, the only indicium of reliability sufficient to satisfy

constitutional demands is the one the Constitution actually prescribes: confrontation."

Id.  A Crawford claim, like all Confrontation Clause claims, is subject to harmless error

analysis.  See United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004).

          Here, the California Court of Appeal correctly applied the standard set forth in

Crawford and rejected petitioner's claim that admission of the videotaped statements

was unconstitutional.  People v. Marquez, 2005 Cal. App. Unpub. LEXIS 1653, at**6-

8.  The court explained that "[i]n this case, admission of the two boys' videotaped

statements did not violate the confrontation opportunity under Crawford because

6

Marquez did have an opportunity to confront the boys, who testified at trial and were available for cross-examination." Id. at *8.

Petitioner is further precluded from federal habeas relief because, after a careful review of the record, it cannot be said that admission of the videotape, even if constitutional error, had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637. The record makes clear that the jury heard the boys' story from both their live trial testimony as well as from their previously videotaped statements. The evidence before the jury would not have been substantially different if the videotaped statements had been excluded or used only for impeachment purposes.

The California Court of Appeal analyzed the boys' videotaped statements and reasonably concluded they were reliable for purposes of admission under California Evidence Code section 1360. The court explained:

> That the boys spoke to the police contrary to Mother's wishes is a strong indicator of reliability. Absent other circumstances providing a motive to lie, it seems highly unlikely that the boys would have risked Mother's displeasure by lying to the police on such an important matter.

People v. Marquez, 2005 Cal. App. Unpub. LEXIS 1653, at *14. Under the Brecht standard, any error in admitting the videotaped statements was harmless because its admission did not have a substantial effect in determining the jury's verdict.

Petitioner is not entitled to federal habeas relief on this claim. The state courts' rejection of petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

7

B.     Admission of Prior Restraining Order

Petitioner claims that the trial court's admission of evidence of a prior restraining order and other evidence of petitioner's prior domestic violence denied him his constitutional right to a fair trial as guaranteed by the Due Process Clause. Petitioner also claims that California Evidence Code section 1109, which allows evidence of prior acts of domestic violence to be admitted when a defendant is accused of a crime involving domestic violence, violates due process by lowering the standard of proof from beyond a reasonable doubt to preponderance.

The record shows that the prosecutor sought to introduce into evidence several prior acts of violence against the Mother and a prior 1991 restraining order.  The trial court admitted the incidents as evidence of prior acts of domestic violence pursuant to California Evidence Code section 1109.

The California Court of Appeal rejected petitioner's due process claims, finding that neither section 1109 nor the admission of the prior acts of violence and the restraining order violated constitutional principles of due process.  People v. Marquez, 2005 Cal. App. Unpub. LEXIS 1653, at*24-26.  Among other things, the court emphasized the relevancy of evidence of prior acts of domestic violence and noted the trial court's power to exclude unduly prejudicial evidence under section 352.  See id. at*24.  The court specifically rejected the claim that the introduction of such evidence lowered the standard of proof to preponderance.  Relying minimally on People v. Reliford, 29 Cal. 4th 1007 (2003), the court explained:

> In *Reliford*, an instruction cautioned that prior act evidence is "'not sufficient by itself to prove beyond a reasonable doubt that [defendant] committed the charged crime.'" (*Reliford*, *at p. 1014*)  With that cautionary language,

8

reasonable jurors would understand that they could not convict based on the propensity evidence alone.  (*Id. at pp. 1014-1015*).  The instruction in this case contained such language that the prior act evidence is "simply one item" to consider in determining guilt beyond a reasonable doubt.  (See *Id. at p. 1016* [approving this additional language in dicta.])  There is no reasonable likelihood that the jury understood the instruction as authorizing conviction on count 1 based on a lowered standard of proof.

People v. Marquez, 2005 Cal. App. Unpub. LEXIS 1653, at*24-26.

The California Court of Appeal's decision was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

The Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not a basis for federal habeas relief because such right is not clearly established Supreme Court precedent under § 2254(d).  Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).  And even if the Ninth Circuit's own generous law on propensity evidence applied here, petitioner's claim would fail.  Under Ninth Circuit law, the admission of other acts evidence violates due process only if there were no permissible inferences the jury could have drawn from the evidence.  See McKinney v. Rees, 993 F.2d 1378, 1384 (9th Cir. 1993).  Even so, the evidence must be of such highly inflammatory or emotionally charged quality as necessarily prevents a fair trial.  Id. at 1384-85.  Here, that was not the case.  The evidence of petitioner's prior acts of violence and the 1991 restraining order were probative of petitioner's intent and motive, and not so highly inflammatory or emotionally charged as to necessarily prevent a fair trial.  After all, the prior acts evidence was not any worse than the evidence the jury heard in connection with the present offenses.

9

The California Court of Appeal also reasonably concluded that, in light of the cautionary instruction given to the jury, there was no reasonable likelihood that the jury understood the instructions as authorizing conviction on a standard of proof lower than beyond a reasonable doubt.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction on prior acts of domestic violence in CALJIC No. 2.50.02, as well as the other instructions given, made clear that petitioner must be proved guilty beyond a reasonable doubt.  See id. (instruction may not be judged in isolation, but must be considered in context of the instructions as a whole and the trial record).

Petitioner is further precluded from federal habeas relief because, after a careful review of the record and evidence, it cannot be said that the admission of the evidence of his prior acts and the 1991 restraining order–even if constitutional error–had substantial and injurious effect or influence in determining the jury's verdict.  See Brecht, 507 U.S. at 637.  The evidence before the jury of petitioner's recent acts of violence against the boys and their mother with which he was charged was arguably far more serious than the evidence of petitioner's prior acts or the allegations contained in the 1991 restraining order.  As such, the introduction into evidence of prior acts and the 1991 restraining order cannot be said to have had a substantial and injurious effect or influence in determining the jury's verdict.

//

C.      Upper Base Term Sentence

Petitioner claims that the trial court's imposition of the upper base term sentence of six years for willfully inflicting injury on a child denied him his right to a jury trial on the aggravating factors.

Before sentencing, petitioner waived jury trial on the prior conviction allegations that he had been convicted of eight prior felonies within the meaning of section 1203(e)(4), and four prior felonies for which he had served prison terms within the meaning of section 667.5(b).  At sentencing, the trial court found no mitigating factors but did cite the following aggravating factors: the physical and emotional injury inflicted upon the victims, the repeated and ongoing nature of the abuse, the negative impact on the boy's development, and the fact that Marquez was on parole at the time of the offenses.  Based on the aggravating factors, the trial court imposed the upper base term sentence of six years for inflicting injury upon a child.

The California Court of Appeal noted these aggravating factors, but disagreed with petitioner's contention that imposition of the upper base term sentence violated his constitutional right to a jury trial under <u>Blakey v. Washington</u>, 542 U.S. 296 (2004). The court explained:

> In regard to the imposition of the upper term on count 2, we conclude that imposition of the upper term based on factors found by the trial court is consistent with *Blakely.*   Under the California sentencing scheme the lower, middle, and upper terms constitute a range of authorized punishments for a given crime; the exercise of judicial discretion in selecting the upper term based on aggravating sentencing factors does not implicate the right to a jury determination because the upper term is within the authorized range of punishment. A defendant, like Marquez, who is convicted of a violation of Penal Code 273d, faces a maximum term of six years in prison that may be imposed "*solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakey v. Washington, supra,* _ U.S. at p. _ [124 S.Ct. at p.2537].) As *Blakely* explained, "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority." ( *Ibid.*) It is instructive that, in distinguishing between permissible and impermissible schemes, the court in *Blakely* explained: "In a system that says the judge may punish burglary with 10

to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury." (*Blakely,* at p. ---- [at p. 2540].) In this case, the six-year upper term was the maximum authorized sentence for violation of section 273d; the trial court's imposition of that maximum did not violate Marquez's right to jury trial.

People v. Marquez, 2005 Cal. App. Upub. LEXIS 1653, at**27-29.

The California Court of Appeal also distinguished the more recent Supreme Court decision in United States v. Booker, 543 U.S. 265 (2005).  In Booker, the Court held that the mandatory application of the Federal Sentencing Guidelines was unconstitutional because they required a trial court to enhance sentences based only on the judge's determination of a fact that was not found by a jury or admitted by the defendant.  Petitioner argues that Booker required that the trial court impose the mid term without making additional factual findings.  The California Court of Appeal again noted that the trial court did not make any additional findings in selecting the upper term.  Rather, the judge imposed the maximum sentence allowed without any additional findings.

> *Booker*, in our view, clarifies that *Blakey's* Sixth Amendment concerns are inapplicable to statutory provisions that merely *permit*, but do not compel, the imposition of a particular sentence upon a particular finding of fact.  In California, *Penal Code section 1170* permits, but does not compel, the imposition of an upper term upon the finding of one or more aggravating factors.

People v. Marquez, 2005 Cal. App. Unpub. LEXIS 1653, at*29, n.9 (citation omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury. U.S. Const. amend. VI.  This right to a jury has been made applicable to state criminal proceedings via the Fourteenth Amendment.

12

Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968).  The Supreme Court's Sixth Amendment jurisprudence was significantly augmented in the wake of Apprendi v. New Jersey, 530 U.S. 466 (2000), which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations.  In Blakey, the Supreme Court explained that "the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303.  The Supreme Court reaffirmed this basic principle in Booker, where the Court determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court.  543 U.S. at 233-38.  The Court held that the sentencing guidelines were unconstitutional because they required the court to impose an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt.  Id. at 243-45.

More recently, the United States Supreme Court examined the reach of the Apprendi line of cases in Cunningham v. California, 127 S. Ct. 856 (2007), where it held that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence.  Id. at 860, 870-71.  The court was directed under the sentencing law to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense.  Id. at 862. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the United States Supreme Court held that the

13

California sentencing law violated the rule set out in <u>Apprendi</u>.  Id. at 871.  Although the sentencing law gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts.  <u>Id.</u> at 868-69.

At the time petitioner raised his claim in state court, <u>Cunningham</u> had not yet been decided.  Any argument that the DSL was already invalid under United States Supreme Court precedent at the time petitioner's conviction became final, and that <u>Cunningham</u> merely announced the pre-existing invalidity of the DSL, is unpersuasive.  <u>People v. Black</u>, 35 Cal. 4th 1238 (2005), the controlling California Supreme Court decision at the time petitioner's conviction became final, applied existing federal precedent (<u>Apprendi</u>, <u>Blakey</u>, <u>Booker</u>) to the DSL and concluded that California's DSL presented no Sixth Amendment concern.  Similarly, prior to <u>Cunningham</u>, several other state courts, under their own systems, found the Sixth Amendment unoffended by sentences within the crime's initial sentencing ranges but above the presumptive points based on judicial fact finding.  <u>See, e.g.</u>, <u>State v. Lopez</u>, 123 P.3d 754, 761-68 (N.M. 2005); <u>State v. Gomez</u>, 163 S.W.3d 632, 661-62 (Tenn. 2005); <u>State v. Maugaotega</u>, 114 P.3d 905, 916 (Haw. 2005).  Application of <u>Cunningham</u> to the instant matter would violate <u>Teague v. Lane</u>, 489 U.S. 288 (1989).

In <u>Teague</u>, the Supreme Court held that a new procedural rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence unless (1) the new rule forbids criminal punishment of "primary, individual" conduct or (2) is a "watershed" rule of criminal procedure.  <u>Caspari v.</u>

14

<u>Bohlen</u>, 510 U.S. 383, 396 (1994).  <u>Teague</u> can only apply to new procedural rules, not new substantive rules.  <u>Hayes v. Brown</u>, 399 F.3d 972, 982 (9th Cir. 2005).  If a rule is procedural, the habeas court must conduct a three step analysis to determine if <u>Teague</u> bars the claim at issue.  <u>Id.</u>  First, the court must determine the conviction's finality date; second, the rule is considered new if, after the court surveys the legal landscape as it then existed, it determines that existing precedent compelled a finding the rule at issue was required by the Constitution; and third, if the rule is new, the court must consider whether it falls into either of the two exceptions to nonretroactivity.  <u>Beard v. Banks</u>, 542 U.S. 406, 411 (2004).

Petitioner's conviction became final on May 11, 2005, ninety days after the California Supreme Court denied Petitioner's petition for review.  <u>See</u> <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir.1999).  Because Petitioner's conviction became final before <u>Cunningham</u> was decided on January 22, 2007, <u>Cunningham</u> is not applicable to Petitioner's sentence unless it both reasonably followed from <u>Blakey</u> and meets one of the two narrow nonretroactivity exceptions.

While petitioner might argue that <u>Cunningham</u> is so closely related to <u>Blakey</u> that it should be applied to those cases which were not final prior to <u>Blakey's</u> issuance, this argument is unpersuasive.  The California Supreme Court and three justices of the United States Supreme Court did not believe that <u>Blakey</u> applied to the DSL.  The <u>Cunningham</u> dissenters believed that California's DSL was more akin to the discretionary Federal Guidelines system ultimately upheld in <u>Booker</u> than it was to <u>Blakey</u>.  In light of this array of authority on the opposite side of the <u>Cunningham</u> court, it cannot be said that the result in <u>Cunningham</u> was dictated by <u>Blakey</u>.  If "reasonable

15

jurists" could have determined that California's sentencing system was constitutionally acceptable, then the Cunningham rule was not dictated by precedent. Whorton v. Bockington, 127 S. Ct. 1173, 1181 (2007).

The Ninth Circuit has held that Blakely does not apply retroactively to convictions that became final prior to its final publication on June 24, 2004. Schardt v. Payne, 414 F.3d 1025, 1027 (9th Cir.2005). In Schardt, the court reasoned that Blakely did not announce a new substantive rule and only announced a new procedural rule, because it merely allocated some of the decision-making authority previously held by judges to juries. Schardt, 414 F.3d at 1036. However, because this new procedural rule announced by Blakey did not amount to a watershed rule of "criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," it did not meet the Teague nonretroactivity exception. Schardt, 414 F.3d at 1036.

Because Cunningham relied heavily on the new procedural rule announced in Blakely, Cunningham does not apply retroactively to convictions that were final prior to its publication. Rosales v. Horel, 2007 WL 1852186, at **2-3 (S.D. Cal. 2007); see also Fennen v. Nakayema, 2007 WL 1742339, at **6 (E.D. Cal. 2007) (if Blakely is not retroactive on collateral review, then there is no reason to find Cunningham would be retroactively applied to cases which have already become final). As in Blakely, the decision in Cunnigham shifted decision-making authority previously held by judges to juries, making it a procedural rule rather than a substantive rule. And, like Blakey, Cunningham does not amount to a "watershed" rule of criminal procedure, because it merely allocates decision making authority from judges to juries. Similarly,

16

Cunningham does not implicate "private" conduct.  Cunningham, like Blakey and

Booker, does not fall under either of the narrow Teague exceptions to retroactivity.

Respondent argues that Teague also bars application of Blakeley and Booker to

this case.  But even if Blakely, Booker and/or Cunningham applied to this case,

petitioner's claim  would fail because he cannot show that any error under those cases

had a substantial and injurious effect or influence in petitioner's sentence.  See

Washington v. Recuenco, 126 S. Ct. 2546, 2553 (2006) (failure to submit sentencing

factor to jury is subject to harmless error analysis).  Only one aggravating factor need

be found to enhance California's mid term to the upper term.  People v. Castellano, 140

Cal. App. 3d 608, 615 (1983).  In this case, the trial judge found, among other things,

that petitioner was on parole at the time of his offenses.  Petitioner's prior felony

convictions were undisputed at trial.  Either of these factors, by themselves, would

suffice to enhance the sentence from the mid term to the upper term.  Petitioner was

convicted by the jury for inflicting injury upon his children and their mother.  On these

facts, with not even a single circumstance in mitigation, there is no reasonable

probability that the court would have considered the middle term with or without any

other circumstances in aggravation.  Because the selection of the upper term was

therefore appropriate under these circumstances, any Blakey, Booker or Cunningham

error cannot be said to have had a substantial and injurious effect on the verdict.

Petitioner is not entitled to federal habeas relief on his claim that the upper sentence is

unconstitutional.

**CONCLUSION**

17

1

2          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

3    The clerk shall enter judgment in favor of respondent and close the file.

4    SO ORDERED.

5

6    DATED: August __20__, 2007          _____
                                          CHARLES R. BREYER
7                                         United States District Judge

8

9

10

11

12

13

14

15

16

17
              G:\CRBALL\2006\0913\Marquez3.denial.wpd
18

19

20

21

22

23

24

25

26

27

28                                        18